Fulvio F. Cajina (SBN 289126)
LAW OFFICE OF FULVIO F. CAJINA
528 Grand Ave.
Oakland, CA 94610
Email: Fulvio@CajinaLaw.com
Tel: 415-601-0779
Fax: 510-225-2636

James Cheney (SBN 325248)
LAW OFFICE OF JAMES CHENEY
528 Grand Ave
Oakland, CA 94610
Email: Attorney@JamesGCheney.com
Phone: (925) 989-5373
Fax: (510) 844-3951

Attorneys for Plaintiff BASHAR ZEIDAN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BASHAR ZEIDAN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF RICHMOND POLICE DEPARTMENT; LT. TIMOTHY GARD; and Does 1 through 20, inclusive,<br><br>Defendants. | Case No.  21-4010<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **Discrimination in Violation of California Government Code § 12940(a);**<br>2. **Harassment In Violation of California Government Code § 12940(j);**<br>3. **Failure to Prevent Discrimination and Harassment in Violation of California Government Code § 12940(k); and**<br>4. **Retaliation in Violation of California Government Code § 12940(h).**<br>5. **Civil Rights Violation (42 U.S.C. § 1983; First Amendment)**<br><br>**DEMAND FOR JURY TRIAL** |

**Complaint for Damages**

Plaintiff BASHAR ZEIDAN alleges:

**NATURE OF ACTION**

1.     This is a civil rights and employment discrimination case involving harassing, abusive, discriminatory and retaliatory conduct of Defendant CITY OF RICHMOND POLICE DEPARTMENT and Does 1 through 20, including, violations of plaintiff's first amendment rights.

2.     These acts render Defendants in violation of California's Fair Employment and Housing Act and the California Labor Code and 42 USC section 1983.

3.     As a direct consequence of these unlawful acts, Plaintiff has suffered economic, consequential and other damages, all to his detriment. Defendants' actions and inactions forced Plaintiff to hire attorneys and file suit and, therefore, incurred substantial attorney's fees and costs.

**JURISDICTION AND VENUE**

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3) as the controversy arises under "the constitution, laws or treaties of the United States."

5.     This Court has supplemental jurisdiction over Plaintiff's California state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in the Northern District of California pursuant to 28 U.S.C § 1391(b) because the acts, events or omissions giving rise to this action occurred in this District. This action is also brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1988, and the First Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a). This Court has further jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 as those claims form part of the same case and controversy under Article III of the United States Constitution.

///

///

**Complaint for Damages**

**PARTIES**

7.     Plaintiff BASHAR ZEIDAN ("Plaintiff") is an individual and at all relevant times was a resident of Contra Costa County, California, and is employed by Defendant CITY OF RICHMOND POLICE DEPARTMENT as an officer. Plaintiff is of middle eastern descent, speaks with an accent, and is over 40 years of age.

8.     Defendant CITY OF RICHMOND POLICE DEPARTMENT is a government agency located in the City of Richmond, and an "employer" of Plaintiff as that term is defined by Cal. Government Code §§ 12926 and 12940.

9.     Defendant LT. TIMOTHY GARD is an individual employed by Defendant CITY OF RICHMOND.  Plaintiff is informed and believes that Defendant GARD is a resident of Contra Costa County.  At all times relevant to this Complaint, GARD was a lieutenant for the Richmond Police Department and Plaintiff's supervisor with the authority to alter the Plaintiffs' employment status and working conditions.

10.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1 through 20, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint by inserting the true names and capacities of each such Defendant, with appropriate charging allegations, when they are ascertained. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a "DOE" is responsible in some manner for the injuries suffered by Plaintiff and for damages proximately caused by the conduct of each such Defendant as herein alleged.

11.     At all times herein mentioned, each of the individual Defendants were the agents, managing agents, servants and employees of the remaining Defendants, and each of them, and at all times herein mentioned, was acting within the course and scope of said agency, service and employment.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

12.     Plaintiff ZEIDAN filed charges of discrimination with the California Department of Fair Employment and Housing which issued the requisite "Right-to-Sue" letters on May 27, 2020.

///

**Complaint for Damages**

**FACTUAL BACKGROUND**

13.     Throughout his employment at the Richmond Police Department ("RPD"), Plaintiff Zeidan has endured ongoing discrimination and harassment on a near daily basis, because he is Jordanian (from the Middle East), has a middle eastern accent, and his perceived religion is Muslim even though he is Catholic.

14.     Plaintiff has been called a "terrorist" by his fellow officers more times than he can remember, and he has been subjected to other offensive race/ethnicity-based conduct.

15.     In 05/06/2011, Plaintiff Zeidan made his first initial complaint and a lawsuit ensued.

16.     In sum and substance, Plaintiff agreed to dismiss the lawsuit in exchange for an agreement by the Richmond Police Department that they would cease and desist acts of discrimination and harassment. The matter was dismissed on 03/21/2012.

17.     Richmond Police Department did not hold true to their words and subsequently Plaintiff and has been subjected to further discrimination and harassment.

18.     Subsequently, Plaintiff has been subjected to adverse employment actions, denied promotions, denied more favorable shifts, and over time opportunities as consequence of this discrimination (all in favor of younger, less qualified, less experienced, less senior, non-middle eastern officers, but also in retaliation for having made internal complaints.

19.     As a direct and proximate consequence of the above-summarized and herein-described discrimination, harassment, retaliation, and intentional infliction of emotional distress, Plaintiff has suffered emotional distress and economic harm, and the general damages associated with infringement of a constitutional right. Additionally, Plaintiff has had to employ legal counsel and will continue to incur fees and costs and may be entitled to other damages as proven at trial.

20.     During Plaintiff's initial Police Training Officer ("PTO") training, RPD officers said many inappropriate comments regarding Plaintiff's race, which Plaintiff noted in Plaintiff's previous lawsuit.

**Complaint for Damages**

1    21.    Officer Carmichael, who was Plaintiff's training officer was aware of the issues and asked

2    Plaintiff to watch the movie CRASH and write a paper relating the movie with Plaintiff's personal

3    experience regarding racism. Plaintiff complied.

4    22.    Plaintiff presented a paper he had written to Carmichael/RPD and in it Plaintiff described

5    the inappropriate remarks made by RPD officers to Plaintiff regarding his race/ethnicity/religion.

6    23.    After Plaintiff finished PTO training, Plaintiff was assigned team 4 beat 7, which was a very

7    busy beat (day-time).

8    24.    Sergeant ("Sgt.") French was the team Sergeant for the swing shit team.

9    25.    Officer Wellhousen was the beat 7 officer for the swing shift, he was Plaintiff's relief.

10   26.    Officer Wellhousen frequently called in sick and repeatedly took the entire month of

11   December off as vacation.

12   27.    During the above mentioned times when Plaintiff's relief was completely unavailable, Sgt.

13   French would not staff Wellhousin's shift and make Plaintiff work a very busy shift all alone.

14   28.    Sgt. French would also hold Plaintiff over to work 11 hour shifts and refused to staff the

15   beat.

16   29.    Other members of the team, Sgt. Jenkins and Acting Sgt. Ellis used to argue over not

17   staffing the beat.

18   30.    Acting Sgt. Ellis told Plaintiff numerous times that Sgt. French told Ellis that she (Sgt.

19   French) did not like Plaintiff.

20   31.    Failing to appropriately staff the beat is not only a disservice to our people, it poses risks to

21   my health and welfare.

22   32.    In 2008, Plaintiff applied for a property crimes detective. Plaintiff did not get the job, so

23   Plaintiff met with Lt. Picket to ask him why Plaintiff did not get the position.

24   33.    The position was given to Officers Funk and Silva. Lt. Picket told Plaintiff to ask Sgt. Silva

25   why, because Sgt. Silva was the one who made the decision.

26   34.    Sgt. Silva is Officer Silva's father.

27

28

**Complaint for Damages**

35.     Plaintiff met with Sergeant Silva and Plaintiff asked him why Plaintiff never got the position and Sergeant Silva told Plaintiff "Son, you did not do anything wrong, they just don't want you here." Plaintiff never forgot that comment.

36.     Around 2008, Officer Harris told Plaintiff that after Plaintiff was hired, he heard officers say they did not want Plaintiff there because they "did not trust" him because Plaintiff was from the Middle East. Officer Harris said it all stemmed from the 9/11 tragedy.

37.     On October 7, 2019 at approximately 1500 hours, Chief French came into our team line up and talked about receiving many complaints of officers bullying other officers and she was not going to tolerate it.

38.     After line-up, at approximately 1600 hours, Officer Landi approached Plaintiff in the PD parking lot and told Plaintiff he wanted to tell Plaintiff something that has been bothering him.

39.     Landi told Plaintiff he has been hearing RPD Officers calling Plaintiff derogatory names such as terrorist to Plaintiff's face and behind Plaintiff's back in the men's Locker room.

40.     In the past two years, Plaintiff was called "terrorist" at least four times to Plaintiff's face. Plaintiff recall at least three to four times in the locker room and Plaintiff remember once while Plaintiff was leaving the locker room. Plaintiff does not remember who called Plaintiff those names, but it bothered Plaintiff a lot.

41.     Officer Landi told Plaintiff he complained to Officer Katz about it a while ago. Officer Landi told Plaintiff he has not said anything to anyone else yet because he thought it was okay with Plaintiff because Plaintiff did not complain about it.

42.     The following day, on October 8, 2019, Plaintiff had a meeting with Sgt. Bailey and Sgt. Lonzo and advised them of the incident.

43.     Plaintiff later asked Officer Katz and he told Plaintiff he heard it in the locker room also.

44.     In March of 2020, Officer Santana also told Plaintiff she heard people calling Plaintiff terrorist behind Plaintiff's back in the past.

45.     On March 6, 2020, while working on team 4, Plaintiff found out from Officer Maececk that he had gotten the PTO special assignment from the first time he put in for it.

**Complaint for Damages**

46. Officer Marecek is from Europe and has a very heavy accent. He has been at the PD for approximately two years and worked for Stockton PD for approximately two years also.

47. Plaintiff does not know why Officer Maececk had gotten this assignment, because Plaintiff was told Plaintiff did not get the assignment because of Plaintiff's accent.

48. Officer Wright also got the PTO assignment from the first time he put in for it. Officer Wright has been working for the RPD for approximately two years and one of the years as a CSI He worked for El Cerrito PD for approximately two years before.

49. Plaintiff also discovered that CSI officer Grivetti just got the PTO position. Officer Grevitti has been a CSI for the past 20 years and has hardly any patrol experience.

50. Officer Katz also got the PTO position. Officer Katz is a new officer.

51. Plaintiff shall prove at trial that, over time, multiple specific assignments and promotions were denied to Plaintiff despite Plaintiff qualifying for said assignments and promotions, in particular the PTO position, crisis negotiation team, DVSU and property crimes detective, and others.

52. On August 1, 2019, while on the way back to the police department, Plaintiff asked Sgt. Russell what Plaintiff needed to do to get to get a special assignment position since Plaintiff have tried many times and failed. Sgt. Russell was the property crimes detective and was involved in the interviews and selection process for those positions. Sgt. Russell told Plaintiff, in essence: "it doesn't matter what you do and don't do, or where you get placed on the ranking list, if they wanted to give to it to you they just would and if they did not want to give it to you they never would."

53. Plaintiff suffered harassment and discrimination through review of his field reports, in particular by Sgt. Bailey, sometimes through unreasonable rejection of reports due to excusable errors, which was part of a pattern of Sgt. Bailey's that only affected Plaintiff.

54. On August 22, 2019, Plaintiff applied for the positions of property crimes detective and domestic violence and sexual assault unit detective. Sgt. Bailey stated in his endorsement that Plaintiff have poor investigative skills and report writing skills, which was untrue.

**Complaint for Damages**

- Page 7 -

55.     Sgt. Bailey's harassment and discrimination and intentional infliction of emotional distress stemmed from an incident in the third week of May 2018, in which Plaintiff was engaged in a tense situation with a homicide suspect and could not respond to a radio call, so Sgt. Bailey yelled and became enraged in a manner that was not characteristic to how he responded to the mistakes of other officers.

56.     Thereafter, in 2018, Sgt. Bailey selected Plaintiff's beat out one day per week, on Thursdays, as the only beat to not be "doubled," meaning Plaintiff was very busy while beat 9 had two officers (Reid and Marson) hardly doing anything.

57.      There are several other instances to be proven at trial in which Sgt. Bailey wrongfully and openly harassed, discriminated against, retaliated against, or intentionally inflicted emotional distress upon Plaintiff, and Plaintiff has timely and adequately complained to managing agents of the RPD about Sgt. Bailey's oppressions.

58.     On December 5, 2018 at approximately 1550 hours, Plaintiff complained his superior officer Sgt. Llamas about poor treatment that Plaintiff was receiving from members of their team: Officers Caine, Reid, Kaiser, and Anderson.

59.     Sgt. Llamas told Plaintiff it was Plaintiff's fault the others treated him poorly, and said "Don't forget you sued them and they will never forget."

60.     From 2016 to 2018, Plaintiff was working under Lieutenant ("Lt.") Gard. Lt. Gard was a friend to Sgt. Llamas and to Officers Caine, Anderson, and Kaiser.

61.     While Plaintiff was working under Lt. Gard, Lt. Gard frequently mentioned the previous lawsuit filed by Plaintiff in 2011 and spoke to Plaintiff in a demeaning tone of voice and with disrespect. It was clear to Plaintiff that Lt. Gard did not approve of Plaintiff's prior lawsuit or his continued complaints to management regarding the use of anti-muslim statements by Richmond Police Officers, which not only impacted Plaintiff directly (as he of middle-eastern descent), but also undermined the Police Department's relationship with the community, as many persons of middle-eastern descent live in Richmond.

**Complaint for Damages**

- Page 8 -

62.     In 2017, Plaintiff applied to be a PTO, but Lt. Gard would not endorse Plaintiff for the position. Plaintiff asked Lt. Gard why, and Lt. Gard told Plaintiff that Plaintiff was not well-rounded. Plaintiff pushed further asking how Plaintiff was not well-rounded, and Lt. Gard said "I am not going to tell you."

63.     Subsequently, Plaintiff confronted Lt. Gard (who had become a Sergeant by this time) about how there were no poor evaluations or poor performance reprimands against Plaintiff, and that Lt. Gard had never raised any problems with Plaintiff's performance and work ethics. This caused Lt. Gard to become nervous and he told Plaintiff at that time that he would recommend Plaintiff  for property crimes detective in the future.

64.     On information and belief, Lt. Gard did not endorse Plaintiff which had the effect of preventing Plaintiff from being elevated to the PTO position, because of Plaintiff's prior complaints, including the filing of his lawsuit, against the police department in violation of Plaintiff's first amendment rights. Upon information and belief, Lt. Gard continued to hold back Plaintiff's career in retaliation for his lawsuit and for expressing concerns about discrimination and harassment through December 2019. Plaintiff notes that Lt. Gard was actually named as a party in his previous lawsuit.

65.     On multiple occasions in 2018, while Plaintiff and other officers were presenting for line-up under Lt. Gard's supervision, and after Officers made inappropriate comments to Plaintiff that could be heard by Lt. Gard, Lt. Gard did not take appropriate action to discipline those who made the comments.

66.     On one occasion, after Plaintiff complained about it to Lt. Gard, Lt. Gard downplayed Officer Kaiser's use of profanities against Plaintiff in front of Plaintiff's team.


**FIRST CAUSE OF ACTION**

**Discrimination in Violation of California Government Code § 12940(a)**

**(Against all Defendants)**


**Complaint for Damages**

67.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein. This claim is directed against Defendants.

68.     California Government Code § 12940 (a) prohibits an employer and any person from discriminating against any employee on the on the basis of age, race, religion, national origin and ethnicity.

69.     Defendants violated California Government Code § 12940 (a) with regard to Plaintiff when they discriminated against Plaintiff on the on the age, ancestry, perceived association with members of a protected class, nation origin, race, and perceived religious creed, and took other adverse employment actions against Plaintiff on the basis of those protected characteristics.

70.     In addition, Plaintiff suffered retaliation because he expressly complained about civil rights violations in the workplace including on the basis of age, ancestry, perceived association with members of a protected class, nation origin, race, and perceived religious creed.

71.     Defendants' acts of harassment, discrimination and retaliation were substantial motivating factors in causing Plaintiff to suffer severe emotional distress, physical injury and mental harm and be subjected to various adverse employment actions.

72.     Defendants' acts were a substantial motivating factor in causing Plaintiff to have suffered and continue to suffer substantial past and future economic losses and other employment and economic benefits and opportunities and other consequential and foreseeable damages and to have suffered and continue to suffer humiliation, embarrassment, mental and emotional distress, and discomfort.

73.     By reason of the conduct of the Defendants, Plaintiff has necessarily retained attorneys to prosecute this action.  Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses incurred in bringing the within action.

        WHEREFORE, Plaintiff prays for relief as set forth herein.

## SECOND CAUSE OF ACTION

### Harassment in Violation of California Government Code § 12940 (j)

### Complaint for Damages

**(Against all Defendants)**

74.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein. This claim is directed against all Defendants as follows.

75.     California Government Code § 12940(j) prohibits an employer and any person from harassing any employee on the basis of age, ancestry, perceived association with members of a protected class, national origin, race, and perceived religious creed.

76.     Defendants violated California Government Code § 12940(j) with regard to Plaintiff when Plaintiff 's age, ancestry, perceived association with members of a protected class, nation origin, race, and perceived religious creed were a substantial motivating factor in his severe or pervasive harassment by Defendants.

77.     Plaintiff considered the work environment to be hostile or abusive, and a reasonable person in Plaintiff 's position would have considered the work environment to be hostile or abusive.

78.     Plaintiff was harassed both other police officers and by persons who Defendants, or its supervisors or agents, knew or should have known were harassing Plaintiff.  Despite this knowledge, Defendants failed to take immediate and appropriate corrective action.

79.     Defendant's discriminatory acts were substantial factors in causing Plaintiff to suffer loss of employment opportunities, loss of dignity, great humiliation, and emotional injuries manifesting in physical illness and emotional distress.

80.     Defendants' acts of harassment, discrimination and retaliation were substantial motivating factors in causing Plaintiff to suffer severe emotional distress, physical injury and mental harm and be subjected to various adverse employment actions.

81.      Defendants' acts were a substantial motivating factor in causing Plaintiff to have suffered and continue to suffer substantial past and future economic losses and other employment and economic benefits and opportunities and other consequential and foreseeable damages and to have suffered and continue to suffer humiliation, embarrassment, mental and emotional distress, and discomfort.

**Complaint for Damages**

82.    By reason of the conduct of the Defendants, Plaintiff has necessarily retained attorneys to prosecute this action.  Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses incurred in bringing the within action.

WHEREFORE, Plaintiff prays for relief as set forth herein.

## THIRD CAUSE OF ACTION

**Failure to Prevent Discrimination and Harassment**

**In Violation of California Government Code § 12940 (k)**

**(Against all Defendants)**

83.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein. This claim is directed against all Defendants as follows.

84.    California Government Code § 12940(k) provides that it is an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination, retaliation, and harassment from occurring in the workplace.

85.    Defendants violated Government Code § 12940(k) with regard to Plaintiff  when Defendants knowingly and recklessly created a hostile work environment for Plaintiff  based on his age, ancestry, perceived association with members of a protected class, nation origin, race, and perceived religious creed, and Defendants also failed to conduct timely reasonable and impartial investigations when Plaintiff  complained about discriminatory conduct on the part of supervisors and management, and failed to take reasonable steps necessary to investigate the misconduct and prevent it from occurring and continuing.

86.    Defendants' conduct toward Plaintiff as alleged above, constitutes an unlawful employment practice in violation of California Government Code § 12940(k).

87.    Defendants' acts were substantial motivating factors in causing Plaintiff to suffer severe emotional distress, physical injury and mental harm and be subjected to various adverse employment actions.

## Complaint for Damages

88.     Defendants' acts were a substantial motivating factor in causing Plaintiff to suffer and continue to suffer substantial past and future economic losses and other employment and economic benefits and opportunities and other consequential and foreseeable damages and to have suffered and continue to suffer humiliation, embarrassment, mental and emotional distress, and discomfort.

89.     By reason of the conduct of the Defendants, Plaintiff has necessarily retained attorneys to prosecute this action.  Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses incurred in bringing the within action.

WHEREFORE, Plaintiff prays for relief as set forth herein.

## FOURTH CAUSE OF ACTION

### Retaliation in Violation of California Government Code § 12940 (h)

### (Against all Defendants)

90.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein. This claim is directed against Defendants.

91.     California Government Code §§ 12940(h), 12926(m), and 12945.2(l) provide that it is an unlawful employment practice for an employer or any other person to retaliate against an employee for opposing an unlawful employment practice, filing a complaint of discrimination or harassment, or participating in any investigation or proceeding involving a claim of discriminatory treatment.

92.     Defendants violated Government Code §§ 12940(h), 12926(m), and 12945.2(l) with regard to Plaintiff when they retaliated against Plaintiff in the terms and conditions of employment, took adverse employment actions against Plaintiff for reporting and lodging complaints of discriminatory treatment in the workplace, and requesting that Defendants take immediate remedial measures and conduct fair and impartial investigations into discriminatory conduct on the part of supervisors and managers. Plaintiff's complaints were substantial motivating reasons for the retaliation.

93.     Defendants' conduct toward Plaintiff as alleged above, constitutes an unlawful employment practice in violation of California Government Code § 12940(h).

**Complaint for Damages**

94.      As a direct and proximate result of defendant's retaliatory conduct, Plaintiff has suffered loss of employment opportunities, indignity, great humiliation and emotional distress manifesting in physical symptoms.

95.      Defendants' acts of harassment, discrimination and retaliation were substantial motivating factors in causing Plaintiff to suffer severe emotional distress, physical injury and mental harm and be subjected to various adverse employment actions.

96.       Defendants' acts were a substantial motivating factor in causing Plaintiff to have suffered and continue to suffer substantial past and future economic losses and other employment and economic benefits and opportunities and other consequential and foreseeable damages and to have suffered and continue to suffer humiliation, embarrassment, mental and emotional distress, and discomfort.

97.      By reason of the conduct of the Defendants, Plaintiff has necessarily retained attorneys to prosecute this action.  Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses incurred in bringing the within action.

          WHEREFORE, Plaintiff prays for relief as set forth herein.


## FIFTH CAUSE OF ACTION

### CIVIL RIGHTS VIOLATION -- (42 U.S.C. § 1983; FIRST AMENDMENT)

### (Against Defendant Lt. GARD)

98.      Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein. This claim is directed against Lt. GARD.

99.      Plaintiff alleges that Defendant Lt. GARD, including Does 1-20, acting under color of law, jointly and/or severally, deprived Plaintiff of those rights, privileges and immunities secured by the United States Constitution as incorporated and applied to the states by and through the Fourteenth Amendment: Through the foregoing acts, and each of them, the Defendants sought to and did retaliate, chill and suppress Plaintiff's exercise of his constitutional right of free speech and did so under color of their authority as law enforcement

officers. Defendants' efforts in this regard were also intended to protect Defendant City of Richmond's federal violations under color.

100.     Plaintiff's targeted speech was the legal case filed in 2011, and subsequent complaints made by Plaintiff to his supervisors, including outside agencies, concerning the Police Department's tolerance of discriminatory statements by its officers, which create a hostile work environment and also undermines the department's outreach and service to the community.

101.     The subject matter of Plaintiff's speech was not typical of his job duties in that he raised concerns regarding management's tolerance of anti-muslim statements by Richmond Police Department officers.

102.     Defendants took adverse employment actions against Plaintiff due to his speech, by denying him opportunities for advancement to more favorable positions in the police force despite Plaintiff's apparent qualification for those positions.

103.     Plaintiff's speech was a substantial or motivating factor for the adverse employment action.

104.     As a result of the foregoing, Plaintiff has been damaged economically and non-economically in an amount unknown to him, but to be proven at time of trial.

105.     By reason of Defendants' unlawful conduct, and in order to enforce his important rights, Plaintiff has incurred and will incur legal expenses including attorneys' fees and costs to remedy the wrongs perpetrated by Defendants and each of them.  Plaintiff is therefore entitled to reasonable attorneys' fees and costs as a matter of law. Additionally, Plaintiff is entitled to punitive damages as to any individual defendants.

          WHEREFORE, Plaintiff prays for relief as set forth herein.

## PRAYER FOR RELIEF

Wherefore Plaintiff prays for judgment against Defendants, and each of them, as follows:

## Complaint for Damages

1.  For a money judgment representing compensatory economic damages, including past and future lost wages, earnings, retirement benefits and other employee benefits, and all other sums of money, together with interest on these amounts, according to proof;

2.  For an award of money judgment for non-economic damages, including mental pain and anguish and emotional distress, according to proof;

3.  For attorney fees and costs;

4.  For any other relief that is just and proper.


Dated:  May 21, 2021                    LAW OFFICE OF FULVIO F. CAJINA

                                        By:_____/s/_____
                                        Fulvio F. Cajina
                                        Attorneys for Plaintiff


## **JURY TRIAL DEMANDED**

Plaintiff demands trial of all issues by jury.


Dated:  May 21, 2021                    LAW OFFICE OF FULVIO F. CAJINA

                                        By:_____/s/_____
                                        Fulvio F. Cajina
                                        Attorneys for Plaintiff


**Complaint for Damages**